UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PETER IOVINO,                                   :
          Petitioner,          :          **MEMORANDUM OPINION**
                             :          **AND ORDER**
v.                                              :
                             :          15 CV 5920 (VB)
UNITED STATES OF AMERICA,                        :          12 CR 353 (VB)
            Respondent.          :
-------------------------------------------------------x

Briccetti, J.:

      Peter Iovino, proceeding pro se, has moved under 28 U.S.C. § 2255 to vacate, set aside or

correct his sentence, alleging his attorney, Domenick J. Porco, Esq., provided constitutionally

ineffective representation.  Iovino's three somewhat overlapping grounds for relief can be

grouped as follows:

      1.  Mr. Porco was ineffective regarding Iovino's guilty plea, both by recommending that

Iovino plead guilty, and by failing to move to withdraw the plea in a timely fashion.  According

to Iovino, absent Mr. Porco's ineffectiveness, Iovino "would not have accepted the plea deal," he

would have withdrawn his plea, and he would have proceeded to trial.

      2.  Mr. Porco failed adequately to advise the Court of "serious differences" between Mr.

Porco and Iovino and failed to withdraw as Iovino's attorney.  As a result, according to Iovino, at

sentencing, the Court "negotiated a sentence for [Iovino] in exchange for withdrawing [Iovino's]

motion to change [his] plea and appoint new counsel," which Iovino found "intimidating."

      3.  Mr. Porco was ineffective at Iovino's Fatico hearing, in that (i) Mr. Porco failed to

introduce certain documents because of a delay in getting Iovino's computer files back from the

FBI, and (ii) Mr. Porco did not prepare adequately for the Fatico hearing, such that he failed to

request an adjournment, call any witnesses, satisfactorily cross-examine the government's

witnesses, or introduce key documents – all because he was supposedly distracted by two events

1

in his personal life, namely, the "sad [and] untimely death of his nephew," and his "forced" resignation as a Town Justice.  Iovino claims Mr. Porco never disclosed his resignation to Iovino or to the Court.

For the following reasons, the motion is DENIED and the petition is DISMISSED.

## BACKGROUND

The motion and attached exhibits, the government's papers in opposition (including an affidavit from Mr. Porco), and Iovino's reply and attached documents, as well as the record of the underlying criminal proceedings, reflect the following:

Iovino, the property manager at the Bedford Terrace Condominium Association (the "Association"), obtained a $150,000 bank loan in the name of the Association, although he had not been authorized by the Association's Board of Managers to do so, and made misrepresentations to the bank as to how the loan proceeds would be used.  The loan proceeds were deposited in the Association's bank accounts, and Iovino made withdrawals from the accounts to pay personal expenses.  Iovino also created fraudulent bank account summaries to conceal his withdrawals, and provided those summaries to the Board and to the Association's accountant.

On January 16, 2013, after extensive plea discussions, Iovino pleaded guilty to wire fraud in connection with his withdrawals from of the Association's bank accounts, and bank fraud in connection with the $150,000 loan.  In his plea allocution, Iovino admitted he provided false information to the bank to obtain the loan, used funds from the Association's bank account for personal expenses, and prepared false bank statements.  Iovino also claimed the Board of Managers was complicit in some of his wrongdoing.  Although there was a dispute as to exactly

what happened, both the government and Mr. Porco agreed, and the Court found, that Iovino's admissions constituted an adequate factual basis for his guilty plea.

There was no written plea agreement in this case. However, the government agreed to accept a guilty plea to a two-count superseding information tailored to accommodate the factual narrative to which Iovino was willing to allocate, instead of the two counts in the original indictment. Prior to the entry of the guilty plea, the government provided a letter to Mr. Porco setting forth its position regarding the application of the Sentencing Guidelines, pursuant to the suggestion of the court in United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir. 1991). As relevant here, the Pimentel letter stated the sentencing range was 51-63 months' imprisonment.

Subsequently, based on Iovino's accusation that the Board members were complicit in the fraud, the government took the position that a 2-level upward adjustment for "obstruction of justice" should apply, U.S.S.G. § 3C1.1, and that Iovino should be denied the 3-level downward adjustment for "acceptance of responsibility," U.S.S.G. § 3E1.1. The resulting sentencing range, according to the government, was 87-108 months' imprisonment.

Because the parties' dispute as to the relevant facts materially affected the Guidelines calculation as well as the Court's determination of what sentence to impose, the Court held an evidentiary hearing on November 25, 2013, pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979). At the hearing, two Board members and a former employee of Iovino testified, and the Court received numerous documents in evidence. The defense did not call any witnesses. However, Mr. Porco cross-examined the two principal government witnesses and submitted numerous documents, both at the hearing and as part of his previously-submitted sentencing memorandum.

Regarding Iovino's claim that Mr. Porco failed to introduce certain documents at the Fatico hearing because of a delay to getting Iovino's computer files back from the FBI, it is undisputed that at the time of Iovino's arrest, the FBI made forensic images of five of the six computers in Iovino's office, and that none of these five computers was removed from Iovino's office.  The sixth computer was removed and forensically imaged by the FBI, and then promptly returned.  (Doc. #58).  Upon request, the government made the files from the imaged computers available to Mr. Porco.  In February 2013, after Iovino pleaded guilty but nine months before the Fatico hearing, the Court authorized Mr. Porco, under the Criminal Justice Act, to hire a computer expert to retrieve the data on the one computer that had been removed, imaged, and then returned, because Iovino apparently had difficulty accessing the data on his own.  Mr. Porco advised the Court that the information on the computer did "not go to [Iovino's] guilt or innocence" but nonetheless might be relevant to sentencing.  (Doc. #20).  Mr. Porco later confirmed that with the help of the expert, Iovino did successfully retrieve the relevant documents.  (Sentencing Tr. 16).

Sentencing was scheduled for Monday, December 23, 2013.  On Friday, December 20, 2013, Mr. Porco notified the Court by letter that Iovino intended to move to withdraw his guilty plea, and also that to the extent Iovino's request was based on Mr. Porco's "performance" as Iovino's attorney, Mr. Porco would seek to withdraw as Iovino's attorney.  (Doc. #37).

At sentencing on December 23, the Court advised the parties that it was the Court's expectation and intention to award Iovino the 3-level reduction for "acceptance of responsibility," and to deny the government's request for a 2-level upward adjustment for "obstruction of justice," such that the final sentencing range would be 51-63 months' imprisonment, consistent with the Pimentel letter.  At that point, Mr. Porco advised the Court

that Iovino would not move to withdraw his guilty plea.  In response to the Court's question, Iovino personally confirmed that he was not moving to withdraw his plea and that he was ready for sentencing.  (Sentencing Tr. 27-30).

The Court then proceeded to sentencing.  First, the Court found that based on the evidence presented at the <u>Fatico</u> hearing, the Board of Managers had <u>not</u> authorized Iovino to take out the $150,000 loan in the Association's name or to withdraw cash from the Association's bank account to pay his personal expenses.  (Sentencing Tr. 37-45).  Nevertheless, the Court declined to impose the "obstruction of justice" enhancement, and did apply the 3-level downward adjustment for "acceptance of responsibility," in part because the government provided the <u>Pimentel</u> letter – which included the downward "acceptance" adjustment and did not include the upward "obstruction" adjustment – even though it knew what Iovino's factual allocution would be.  (Sentencing Tr. 53, 57-63).  As a result, the applicable sentencing range was 51-63 months' imprisonment, which was the same range contained in the <u>Pimentel</u> letter.  In the end, the Court imposed a sentence of 60 months' imprisonment (as well as supervised release, restitution, and a forfeiture order), which was affirmed on appeal.

After petitioner filed his 2255 motion, Mr. Porco submitted a detailed affirmation regarding his representation of Iovino during the criminal case.  (Docs. ##53-1, 53-2).  Among other things, Mr. Porco states that he spent numerous hours analyzing the voluminous discovery in the case and met with Iovino more than a dozen times to discuss the case and possible defenses, including the defense that although the loan application contained false representations and Iovino had personally taken some of the loan proceeds, this had all been done with the knowledge and approval of the Board of Managers.  Mr. Porco had serious reservations about whether Iovino's version of events, even if true, would constitute a defense.  Thus, Mr. Porco

advised Iovino he (Mr. Porco) should try to negotiate a guilty plea, and Iovino agreed.  (Porco Aff. ¶¶ 6-10).

According to Mr. Porco, during several months of plea discussions, Iovino came to accept the fact that a guilty plea was his best course of action, but he adamantly refused to plead guilty to embezzlement as such.  Eventually, Mr. Porco's efforts bore fruit, because the government agreed to accept a plea in which Iovino would admit he submitted a fraudulent loan application, and withdrew funds from the Association's bank accounts and prepared fraudulent bank account summaries designed to conceal the fact of the withdrawals, but would not admit that he did these things without the Board's approval.  Also, the government agreed to accept the plea without requiring a written plea agreement, such that Iovino was free to contest some aspects of the Guidelines calculation at sentencing.   (Porco Aff. ¶¶ 11-14).

Regarding the Fatico hearing, Mr. Porco states that he began his preparation more than a month before the hearing, and had obtained transcripts of deposition testimony given by members of the Board of Managers in a related civil lawsuit pending in State court.  Those depositions were very helpful in Mr. Porco's preparation, because the same witnesses were expected to testify at the Fatico hearing.  In addition, Mr. Porco pointed out that he had submitted a comprehensive sentencing submission nearly two months before the Fatico hearing, which included numerous documents and a detailed analysis of same.  Also, during the weekend immediately preceding the hearing, Mr. Porco spent approximately twenty hours reviewing 3500 Material he had received from the government a few days earlier, and collating the documents he intended to use at the hearing.  Mr. Porco also personally interviewed two possible defense witnesses, both lawyers, and determined that neither was able to provide helpful information, and

one would actually undermine Iovino's defense if he testified.  Mr. Porco also engaged a private investigator who interviewed other possible witnesses, to no avail.  (Porco Aff. ¶¶ 17-22).

Mr. Porco flatly denies the suggestion that he was distracted from this case by events in his personal life.  He explains that he did obtain pertinent documents and interview (or have an investigator interview) potential witnesses.  Moreover, Mr. Porco explains how his professional obligations distracted him from the personal tragedy of the death of his nephew, not the other way around.  Indeed, between the date of the nephew's death (October 7, 2013) and sentencing (December 23, 2013), Mr. Porco spent approximately 40 out-of-court hours working on Iovino's case.  Mr. Porco also flatly denies he was distracted by the investigation regarding his judicial position, again making reference to the many tasks he performed in connection with Iovino's case during the relevant time period.  (Porco Aff. ¶¶ 23-25).

Mr. Porco also states that the week before sentencing he met with Iovino and discussed at length Iovino's desire to move to withdraw his guilty plea.  According to Mr. Porco, after a full discussion of the absence of legal or factual grounds for such a motion and the likely consequences if it were granted, Mr. Porco believed that Iovino had decided not to make the motion.  A few days later, at a meeting on Friday, December 20, 2013, Iovino told Mr. Porco he did want to move to withdraw his plea, and Mr. Porco immediately notified the Court and government counsel.  (Porco Aff. ¶ 25).  At sentencing, as noted above, after the Court indicated to Iovino that it was not going to impose the "obstruction" enhancement or deny the "acceptance" adjustment, Iovino explicitly stated that he was not going to move to withdraw his guilty plea.  (Porco Aff. ¶ 16).

**DISCUSSION**

None of petitioner's grounds for relief has merit.  Based on the record of the criminal proceedings, as well Mr. Porco's detailed and credible-on-its-face affidavit, the Court finds and concludes that Mr. Porco provided constitutionally effective representation.

I.    <u>Alleged Ineffectiveness Regarding Iovino's Guilty Plea</u>

Regarding Iovino's claim that Mr. Porco was ineffective in recommending that Iovino plead guilty and by failing to move to withdraw the plea in a timely fashion, the Court finds that Mr. Porco's "representation [did not fall] below an objective standard of reasonableness," <u>United States v. Hernandez</u>, 242 F.3d 110, 112 (2d Cir. 2001), the first prong of the familiar ineffectiveness of counsel standard under <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984). Unquestionably, Mr. Porco's advice to Iovino that he should plead guilty was objectively reasonable given the strength of the government's case.  Ordinarily, in cases resolved by guilty plea, the Court is not in a position to assess the strength of the government's case.  But here, the Court conducted a day long <u>Fatico</u> hearing, at which several witnesses testified and numerous documents were received in evidence, and also reviewed voluminous documentary evidence submitted by Iovino as part of his sentencing submission.  This evidence not only constituted overwhelming proof of Iovino's guilt, but also demonstrated that Iovino's version of events was blatantly self-serving, implausible, and just plain incredible.  Iovino's defense was not viable – it is hard for the Court to imagine how a reasonable jury could hear this evidence and not find guilt beyond a reasonable doubt.  In short, Iovino's decision to plead guilty was the correct one; had he not done so, the consequences for him would likely have been much worse.

Moreover, the plea deal Mr. Porco secured for Iovino demonstrates <u>effectiveness</u>, not ineffectiveness.  This is because Mr. Porco persuaded the government to agree to tailor the

charges, as set forth in the superseding information, to the factual narrative to which Iovino was willing to allocute, rather than to the charges in the original indictment.  The effect was that Iovino was able to plead guilty without admitting to an outright theft.  Moreover, Mr. Porco's ability to persuade the government to accept the plea without a written plea agreement benefitted Iovino because it allowed him to plead guilty and still contest certain key sentencing issues under the Guidelines.  The fact that the Court, in the context of sentencing, ultimately rejected Iovino's version of events hardly means Mr. Porco was ineffective.  It just means Iovino's version of events was bogus.

Iovino's claim that Mr. Porco was ineffective for failing to move to withdraw the guilty plea in a timely fashion is likewise without merit.  A defendant has no absolute right to withdraw a guilty plea, United States v. Rosen, 409 F.3d 535, 545 (2d Cir. 2005), and Iovino has not articulated any "fair and just" reason for withdrawing the plea.  Fed. R. Crim P. 11(d)(2)(B).  It is not even clear why Iovino wanted to withdraw his plea, other than that he feared a sentence above the sentencing range set forth in the government's Pimentel letter.  That fear, to the extent it existed, was resolved in Iovino's favor when the Court advised Iovino it did not intend to impose the upward "obstruction" adjustment or fail to award the downward "acceptance" adjustment.

Moreover, petitioner has not demonstrated "actual prejudice," the second prong under Strickland, 466 U.S. at 692 – meaning "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  United States v. Hernandez, 242 F.3d at 112.  Had Iovino moved to withdraw his plea at sentencing, that motion would have been timely made.  However, that does not mean the Court would have granted the motion; in fact, the motion would have been denied as plainly without merit.  The guilty plea in

this case complied in all respects with the requirements of Rule 11, and Iovino's factual

allocution was sufficient to support a finding of guilt on both counts of the superseding

information.  Iovino offers no proof that such a motion would have succeeded or, if it had, that

that would somehow have inured to his benefit.  Accordingly, Iovino has not satisfied the second

prong under <u>Strickland</u>.

II.      <u>Alleged Ineffectiveness in Mr. Porco's Failure to Advise the Court of "Serious
         Differences" between Mr. Porco and Iovino, and Failing to Withdraw as Iovino's
         Attorney</u>

         Iovino next claims Mr. Porco was ineffective by failing to inform the Court of "serious

differences" between Mr. Porco and Iovino and failing to withdraw as Iovino's attorney, such

that Iovino was somehow intimidated at sentencing by the Court's "negotiate[ing] a sentence for

[Iovino] in exchange for withdrawing [Iovino's] motion to change [his] plea and appoint new

counsel."  This claim is absurd on its face.  There is no dispute that as soon as Iovino suggested

he might want to move to withdraw his plea and obtain a new attorney, he met with and

discussed the matter at length with Mr. Porco, and that as soon as Iovino made up his mind he

did want to make the motion, Mr. Porco immediately informed the Court and opposing counsel.

         Moreover, nothing remotely intimidating happened at sentencing.  After discussing the

matter at length with Mr. Porco, the Court clarified that Iovino wished to withdraw his plea

because he was concerned the Court would adopt the government's proposed Guidelines

calculation, including the "obstruction" adjustment and not including the "acceptance"

adjustment.  The Court then advised Iovino that it did not intend to adopt these aspects of the

government's Guidelines calculation, after which Iovino explicitly stated he had decided <u>not</u> to

move to withdraw his guilty plea.  (Sentencing Tr. 27-29).

In addition, in his letter to the Court dated December 20, 2013, Mr. Porco <u>did</u> inform the Court in a timely fashion of Iovino's concerns about Mr. Porco's performance as his attorney, and said that if the request to withdraw the guilty plea was "premised, in whole or in part, on [Mr. Porco's] performance as [Iovino's] counsel," he would "have to seek to withdraw as [Iovino's] attorney."  (Doc. #37).  But, in the end, after Iovino's concerns were addressed by the Court at sentencing, and resolved in Iovino's favor, Iovino decided not to move to withdraw his plea.  The Court asked: "Are you ready for sentencing, Mr. Iovino?" to which Iovino responded: "Yes."  (Sentencing Tr. 30).  Iovino did not ask the Court for an adjournment or for appointment of new counsel.

Accordingly, Mr. Porco's performance as Iovino's attorney was objectively reasonable, and Iovino has not demonstrated any prejudice.

III.    <u>Alleged Ineffectiveness at the Fatico Hearing</u>

Iovino's final claim is that Mr. Porco was constitutionally ineffective in his preparation for and performance at the <u>Fatico</u> hearing.  This claim is plainly without merit, and must be denied.

First, Iovino claims Mr. Porco did not adequately prepare for the hearing based, in part, on his failure to access Iovino's computer in a timely fashion.  But there is no question the computer in question was returned to Iovino shortly after his arrest and that the files on all the imaged computers were made available to Iovino in discovery prior to his guilty plea.  Moreover, Iovino successfully retrieved the documents from the computer in question months before the <u>Fatico</u> hearing.

Second, Iovino claims Mr. Porco failed to request an adjournment, call any witnesses, satisfactorily cross-examine the government's witnesses, or introduce key documents (including

documents from the computer mentioned above).  But decisions such as what witnesses to call, which documents to introduce and the like, are clearly tactical decisions left to the judgment of defense counsel, and will not be second-guessed.  See, e.g., United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997); United States v. Simmons, 923 F.2d 934, 956 (2d Cir. 1991); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987).

Moreover, Mr. Porco did, in fact, submit numerous documents to the Court as exhibits to his sentencing submission and at the Fatico hearing.  Iovino has not identified which other documents, including ones from the computer in question, Mr. Porco should have submitted and that would have made any difference.  As to witnesses, the Court presided over the Fatico hearing, and there is no question Mr. Porco vigorously cross-examined the government's witnesses.  As to additional witnesses Mr. Porco may have called, Mr. Porco states he interviewed two possible witnesses, neither of whom would have provided helpful testimony and one of whom would actually have undermined Iovino's case, and that his investigator interviewed additional witnesses, none of whom would have provided helpful testimony.  Based on the Court's personal knowledge of Mr. Porco's abilities as a competent and experienced defense attorney, there is no doubt in the Court's mind that if Mr. Porco did not think these witnesses would have helped, they would not have helped.

Iovino's claim that Mr. Porco failed to prepare for the Fatico hearing and should have requested an adjournment is also belied by Mr. Porco's detailed and comprehensive affirmation, and by his competent and professional performance at the hearing.  There is no reason to doubt that Mr. Porco began his preparation more than a month before the hearing, reviewed deposition transcripts of relevant testimony in a related civil case, and spent about 20 hours the weekend before the hearing reviewing 3500 Material and collating the documents he intended to use at the

hearing.  All of Mr. Porco's sworn assertions in this regard are consistent with the Court's

personal knowledge of Mr. Porco's competence and professionalism.  And other than his own

self-serving and improbable assertions, Iovino has offered no support for his contrary claim.

      Finally, there is no evidence whatsoever to support Iovino's "Hail Mary pass" claim that

Mr. Porco was distracted during this time period by personal matters, such as the death of his

nephew and the investigation of his position as a local judge.  Mr. Porco's credible affirmation

refutes this claim entirely, and the Court rejects it as plainly frivolous.

      In short, Iovino quibbles with Mr. Porco's strategic decisions, but offers few details as to

what he hoped Mr. Porco would do instead.  The reason for Iovino's failure in this regard is

obvious – the case against him was overwhelming, and Mr. Porco had very little to work with

and no good strategic options available.  In short, Mr. Porco's performance as Iovino's attorney

in connection with the Fatico hearing was objectively reasonable, and Iovino has not

demonstrated any prejudice.

      Finally, as to all of Iovino's various claims, there is no reason to hold any further hearing

in this case.  In light of this Court's intimate familiarity with the underlying criminal

proceedings, Mr. Porco's detailed and credible affidavit, and the fact that petitioner's "highly

self-serving and improbable assertions" are contradicted by documentary evidence and the

record of the guilty plea proceeding, the Fatico hearing, and the sentencing proceeding, no

purpose would be served by expanding the record.  Chang v. United States, 250 F.3d 79, 86 (2d

Cir. 2001); see Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011).

**CONCLUSION**

Petitioner's motion under 28 U.S.C. § 2255 is DENIED and the petition is DISMISSED.

As petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue.  28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v United States, 369 U.S. 438, 444-45 (1962).

The Clerk is instructed to close case 15 CV 5920.

Dated:  July 14, 2016
         White Plains, NY

                              SO ORDERED:


                              Vincent L. Briccetti
                              United States District Judge